# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME A. CLAY,<br><br>   Plaintiff,<br><br>   v.<br><br>AT&T UMBRELLA BENEFIT PLAN NO. 3,<br><br>   Defendant. | No. 2:17-cv-00749-KJM-KJN PS<br><br>FINDINGS AND RECOMMENDATIONS REGARDING SUMMARY JUDGMENT<br><br>(ECF Nos. 71) |

This case arises from Defendant's alleged improper denial of short term disability benefits, as governed by the Employee Retirement Income Security Act. The following causes of action survived multiple rounds of motions to dismiss and amendments to the pleadings: (I) failure to provide Plaintiff benefits under 29 U.S.C. § 1132(a)(1)(B), a "full and fair review" of his claim for benefits, or "the true reasons and documentation supporting [its] denial of his claim" under 29 U.S.C. § 1133; and (II) failure to provide Plaintiff with information about his benefits, under 29 U.S.C. § 1132(c)(1)(B). Plaintiff also generally alleges that "Defendant[ ] acted under a conflict of interest in denying [his] claim."

Defendant has moved for summary judgment, and Plaintiff opposed. (ECF Nos. 71, 74.) After carefully considering the written briefing, the record, and the applicable law, the Court recommends Defendant's motion for summary judgment be GRANTED.

///

1

**Factual Background**

    **A. Plaintiff's Insurance Plan**

Plaintiff works as a splicing technician for Pacific Bell Telephone Company. (ECF No. 71-2, Defendant's Statement of Undisputed Facts, at ¶ 1.) His employer–sponsored insurance includes eligibility for the AT&T West Disability Benefits Program. (Id. at ¶ 3.) This Disability Program offers short term disability ("STD") benefits to disabled employees whose injury precludes them "from engaging in [their] normal occupation or employment." (Id. at ¶ 7.) It is self-funded by the AT&T Voluntary Employee Beneficiary Association Trust. (Id. at ¶ 6; see also 71-4 (AR) at p. 84, the "Summary Plan Description.") The Disability Program grants Defendant the authority to "determine the rights and status of [participants, and] the eligibility of any individual" to receive benefits under the plan's various programs. (ECF No. 71–2 at ¶ 4.) Defendant has delegated this authority to its Plan Administrator, who in turn has delegated its authority to determine benefits claims and appeals to a claims administrator: Sedgwick Claims Management Services Center, Inc. (Id. at ¶ 5.) Sedgwick operates the AT&T Integrated Disability Service Center, which processes STD claims.[1] (Id. at ¶¶ 5, 14.)

To properly demonstrate disability, participants must see a physician, "follow a treatment plan that is reasonably designed" to help them recover, and "periodically furnish satisfactory Medical Evidence of [their] disability from [their] physician." (AR 61.) The medical evidence must consist of "[o]bjective medical information sufficient to show that the Participant is Disabled . . . [such as] results from diagnostic tools and examinations performed in accordance with the generally accepted principles of the health care profession." (AR 81.) Further, the Disability Program asks participants to "[e]nsure that [their] medical providers cooperate with the Claims Administrator to provide" it with "all necessary information . . . in a timely manner." (AR 61.) Sedgwick may discontinue benefits if the participant does not provide it with "objective Medical Evidence for [his] condition." (AR 67.) It is within the sole discretion of Sedgwick "or its delegates" to determine whether a participant is qualified to received STD benefits. (AR 62.)

---

[1] For the sake of simplicity, the Court will refer to both entities (Sedgwick Claims Management Services Center and AT&T Integrated Disability Service Center) as "Sedgwick."

### B. Plaintiff's Disability Claims

Plaintiff underwent surgery on his right knee on December 7, 2016. (ECF No. 71–2 at ¶ 13.) On December 16, 2016, Plaintiff applied for STD benefits; Sedgwick approved his claim for a period of disability extending until January 29, 2017. (Id. at ¶ 15.) On January 30, 2017, this period was extended through March 9, 2017. (Id. at ¶ 16.) Thereafter, Sedgwick contacted Plaintiff to explain that it needed more medical documentation to further extend Plaintiff's STD benefits. (Id. at ¶¶ 16–17.) After some delay on Plaintiff's part, his physician informed Sedgwick that Plaintiff was scheduled for an upcoming appointment; Sedgwick further extended Plaintiff's benefits through March 15. (Id. at ¶¶ 18–19.) Sedgwick advised Plaintiff multiple times of his ongoing responsibility to provide it with updated medical records should he wish to assert his eligibility for STD benefits. (Id. at ¶¶ 15, 16, 18, 19, 21, 23.)

In March 2017, Plaintiff's physician informed Sedgwick that Plaintiff's knee exam was "fairly normal," and that Plaintiff could return to work in April. (Id. at ¶ 20, 22.) Sedgwick discontinued Plaintiff's STD benefits, but this decision was overturned on appeal; Sedgwick then granted Plaintiff an extension through June 11, 2017. (Id. at ¶¶ 24–28.) In the summer of 2017, Sedgwick reviewed Plaintiff's file, and found Plaintiff had not submitted any updated medical records after March 31. (Id. at ¶¶ 29–31.) When Sedgwick contacted both Plaintiff's physician and physical therapist, it learned that Plaintiff was not scheduled for any upcoming medical appointments. (Id. at ¶ 31.) On July 26, Sedgwick sent Plaintiff a letter explaining that it denied his request to extend STD benefits because it did not receive medical documentation demonstrating ongoing disability. (Id. at ¶ 32.) The letter quoted the Disability Program's participant guide, which detailed claimants' duties to "periodically furnish satisfactory medical evidence of your disability from your physician," and outlined the appeal process. (AR 333–34.)

Plaintiff appealed, but did not furnish updated medical records. (ECF No. 71–2 at ¶ 34.) Sedgwick subsequently contacted Plaintiff asking for the records, but he "stated that the medical information in the file was complete and that he had nothing else to provide." (Id. at ¶ 35.) Sedgwick then referred Plaintiff's case to an independent physician advisor. (Id. at ¶ 36.) The physician advisor, a board-certified orthopedic surgeon, attempted to contact Plaintiff's physician

3

on multiple occasions, but never reached him.  (Id. at ¶ 37.)  After reviewing the medical records that were on file for Plaintiff, the physician advisor determined that there was insufficient medical evidence to establish that Plaintiff was disabled after June 11, 2017.  (Id. at ¶ 38.)  Thereafter, Sedgwick upheld its previous decision based on the physician advisor's analysis and the lack of updated medical records concerning Plaintiff's alleged disability.  (Id. at ¶ 39.)

Plaintiff returned to work without any restrictions on August 14, 2017.  (Id. at ¶ 33.)

**Procedural History**

On April 7, 2017, Plaintiff, proceeding without counsel, filed a complaint against Defendant challenging the denial of his STD benefits.[2]  (ECF No. 1.)  Plaintiff's most recent (third amended) complaint alleged thirteen causes of action; however, only the first, third, and fourth causes of action remain.  (See ECF No. 52 at 10:20–25.)  In Plaintiff's first cause of action, he seeks recovery of STD benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).  (ECF No. 43 at 11:26.)  His third cause of action alleges that Defendant violated 29 U.S.C. § 1133 by failing to provide Plaintiff with a "full and fair review" of his claim for benefits and "failing to disclose to Plaintiff the true reasons and documentation supporting [its] denial of his claim."  (Id. at 14:19–25.)  These causes of action, which the Court reviews together, solely concern Plaintiff's application for STD benefits after June 11, 2017.  (ECF No. 52 at 5:11–14.)  In his fourth cause of action, Plaintiff alleges that Defendant violated 29 U.S.C. § 1132(c)(1)(B) by failing to provide Plaintiff with information regarding his STD benefits—specifically evidence of coverage and "summary plan description materials."  (Id. at 15:15–21.)  Plaintiff also generally alleges that "Defendant[ ] acted under a conflict of interest in denying [his] claim," thereby violating ERISA.  (Id. at 11:12–13.)

Defendant filed a motion for summary judgment on Plaintiff's remaining three claims.  (ECF No. 71.)  Plaintiff failed to file a cross–motion, as per the stipulated schedule, so the Court ordered Plaintiff to file his opposition (or non–opposition) by September 30, 2019.  Plaintiff then filed a "cross–motion for summary judgment," which the Court construes as Plaintiff's opposition to Defendant's motion.  (ECF No. 74.)

---

[2] Although it was Sedgwick that denied Plaintiff's claim, the court previously held that AT&T Umbrella Benefit Plan No. 3 is the only proper defendant in this case.  (ECF No. 52 at 4:11–18.)

4

**Standard of Review: Abuse of Discretion vs. De Novo; Alleged Conflicts of Interest**

Courts generally review a denial of ERISA benefits de novo. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006). However, if "an ERISA plan confers discretionary authority upon a plan administrator to determine eligibility for benefits, [courts] review the administrator's decision to deny benefits for an abuse of discretion." Nolan v. Heald College, 551 F.3d 1148, 1153 (9th Cir. 2009) (citations omitted). When an insurance plan delegates to a third party "discretionary authority to both interpret" the plan and determine participants' "eligibility for benefits," it has "unambiguously confer[red] discretionary authority on [the delegee] to administer benefits claims." Nolan, 551 F.3d at 1153 (quotation marks and citation omitted); see also Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 866 (9th Cir. 2008) (abuse of discretion review proper where insurer delegated discretionary authority to interpret the plan and "determine eligibility for and entitlement to Plan benefits").

When an insurer both funds an insurance plan and administers claims for benefits under that plan, "'this dual role creates a conflict of interest,'" which a reviewing court must consider in applying the abuse of discretion standard. Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011) (quoting Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008)). However, where a plan is self-funded, rather than funded by the insurer, no conflict of interest exists. See Williby v. Aetna Life Insurance Co., 867 F.3d 1129, 1138 (9th Cir. 2017) (holding defendant insurer had no conflict of interest where employer funded insurance plan); Martin v. Aetna Life Insurance Company, 223 F. Supp. 3d 973, 983 (C.D. Cal. 2016) (same result); see also Castillo v. Cigna Healthcare, 11 Fed. Appx. 945, 950 (9th Cir. 2001) (plaintiff "presented no basis to believe that even an apparent conflict of interest existed" where employer AT&T "authorized [third party] Cigna to administer claims under the plan on its behalf" and where the plan was self-funded).

Here, Defendant has delegated to Sedgwick its authority "to determine all claims and appeals for benefits under the [disability] Program." (ECF No. 71–2 at ¶¶ 4–5; AR 80.) Defendant's delegation to Sedgwick indicates abuse of discretion is the appropriate standard of review. Nolan, 551 F.3d at 1153; Saffon, 522 F.3d at 866.

As to Plaintiff's general allegations in his complaint that Defendant "acted under a conflict of interest" in denying STD benefits (see ECF No. 43 at 11:12–13), the Court sees no conflict. Plaintiff attached no evidence to his summary judgment motion demonstrating a conflict of interest. (See ECF No. 74.) More importantly, the Court notes that Plaintiff's Disability Program was self-funded by an employee trust, rather than Sedgwick. (ECF No. 71-2 at ¶ 6; see also AR 84.) Under the law, Sedgwick has no conflict of interest when it denied Plaintiff's claim for STD benefits. Williby, 867 F.3d at 1138. Thus, the Court will apply the abuse of discretion standard of review without considering any alleged conflicts of interest. See Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009) ("In the absence of a conflict [of interest], judicial review of a plan administrator's benefits determination involves a straightforward application of the abuse of discretion standard") (citation omitted).

**Legal Standard – Abuse of Discretion**

Typically, a court will grant summary judgment in a case where there is no genuine issue of material fact "and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, in an ERISA case reviewed for abuse of discretion, "'summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'" Nolan, 551 F.3d at 1154 (quoting Benedixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999) (overruled on other grounds in Abatie, 458 F.3d at 963); see also Hoffman v. Screen Actors Guild Producers Pension Plan, 757 Fed. Appx. 602, 605 (9th Cir. 2019) ("Ordinarily, where abuse of discretion review is appropriate, the district court's review is limited to the administrative record and the traditional rules of summary judgment do not apply").

Courts reviewing an administrator's denial of ERISA benefits shall not disturb that decision if it was reasonable. Conkright v. Frommert, 559 U.S. 506, 521 (2010); Stephan v. Unum Life Ins. Co. of America, 697 F.3d 917, 929 (9th Cir. 2012); see also McDaniel v. Chevron Corp., 203 F.3d 1099, 1113 (9th Cir. 2000) ("A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith."). Under abuse of discretion

review, courts will only overturn decisions that are "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts on the record." Salomaa, 642 F.3d at 676. Moreover, "judicial review of benefits determinations is limited to the administrative record—that is, the record upon which the plan administrator relied in making its benefits decision." Stephan, 697 F.3d at 930 (cleaned up).

**Analysis**

I. **Sedgwick did not abuse its discretion when it denied Plaintiff's claim for STD benefits after June 11, 2017.**

In this case, Sedgwick denied Plaintiff's application for extended STD benefits because it lacked medical documentation demonstrating that Plaintiff was disabled after June 11, 2017; Sedgwick so informed Plaintiff in a letter. (ECF No. 71-2 at ¶ 32.)

Sedgwick's denial of Plaintiff's claim was reasonable because Plaintiff did not comply with the Disability Program's reasonable requirements that participants see a physician and "follow a treatment plan that is reasonably designed" to help them recover, as well as "periodically furnish satisfactory Medical Evidence of [their] disability from [their] physician." (Id. at ¶ 8). Notwithstanding these requirements, Plaintiff failed to furnish any medical documentation establishing disability beyond March 31, 2017. (Id. at ¶ 29.) In fact, Plaintiff informed Sedgwick that he had no further information to provide. (Id. at ¶ 35.) Sedgwick also learned through Plaintiff's treating physicians that they were no longer treating Plaintiff's knee. (Id. at ¶ 31.) Plaintiff's failure to comply with the Disability Program requirements constitutes a reasonable basis for denying his claim. See Hoskins v. Bayer Corp. and Business Services Long Term Disability Plan, 564 F. Supp. 2d 1097, 1106–07 (N.D. Cal. 2008) (administrator did not abuse discretion in discontinuing benefits where plaintiff failed to comply with plan's requirement that she undergo regular treatment and furnish administrator with proper documentation).

The thrust of Plaintiff's argument in his filing appears to be that Sedgwick abused its discretion in summarily denying his claim, as Sedgwick employees are not physicians, and that it should have provided him with more information about its denial of extended benefits. (ECF No.

74 at pp. 6–9.) However, as the record shows, Sedgwick relied on the medical evidence before it in making its determinations. (See ECF No. 71–2 at ¶ 15, reliance on Dr. Westin's medical notes in January 2017; ¶ 18, reliance on Dr. Westin's appointment with Plaintiff; ¶ 22, Dr. Westin's March 2017 examination notes; ¶¶ 26–27, Dr. Najibi's review of the medical records.) Germane to this dispute, Sedgwick's denial of any extension beyond June 2017 was supported by ample evidence demonstrating Plaintiff had failed to comply with the Disability Program's requirements. (See AR 282-83, Sedgwick's January 2018 letter detailing the physician advisor's review of Plaintiff's file; AR 332-34, Sedgwick's July 2017 letter noting the lack of updated medical evidence.) Further, the administrative record clearly shows that Sedgwick informed Plaintiff multiple times of his duty to provide medical evidence in support of his claim, which Plaintiff did not do. (Id. at ¶¶ 15–19, 21, 23, 29, 31, 32, 34, 35, 39.) Plaintiff's questioning aside, he has provided no facts suggesting Sedgwick's order was unreasonable, much less made in bad faith. Booton v. Lockheed Med. Ben. Plan, 110 F.3d 1461, 1463 (9th Cir. 1997) (noting the requirements of denial letters, which should include the "specific reason or reasons for the denial" and the "specific reference to pertinent plan provisions on which the denial is based.").

Thus, Sedgwick's decision to deny Plaintiff an extension of his disability benefits beyond June 11, 2017 appears reasonable, and was not an abuse of discretion. Conkright, 559 U.S. at 521. Accordingly, Defendant's motion for summary judgment on Plaintiff's first and third claims should be granted.

**II.     Plaintiff is not entitled to damages under 29 U.S.C. § 1132(c)(1)(B)**

Plaintiff also claims that Defendant violated ERISA by failing to provide him with information regarding his STD benefits. (ECF No. 43 at 15:15–21.) However, ERISA provides for damages when an administrator "fails or refuses to comply with a *request* for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c)(1)(B) (emphasis added). Here, nothing in the record indicates Plaintiff ever requested information regarding his Disability Program from Defendant. (See, generally, ECF No. 71–2 and ECF No. 74.)

///

Because the ERISA provision on which Plaintiff relies requires that a participant request plan information, and Plaintiff has not done so, the Court recommends Defendant's motion for summary judgment on Plaintiff's fourth cause of action should be granted.  See Sgro v. Danone Waters of N. Am., Inc., 532 F.3d 940, 945 (9th Cir. 2008) ("[A] defendant can't be liable unless it received a request."); Wesley v. Monsanto Co., 710 F.2d 490, 491 (8th Cir. 1983) (affirming district court's holding that "because [plaintiff] had not requested a copy of [her insurance] plan, she could not recover damages for [defendant's] failure to provide a copy").

**FINDINGS AND RECOMMENDATIONS**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 71) be GRANTED IN FULL;

2. Judgment be entered for Defendant; and

3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, as per 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

IT IS SO RECOMMENDED.

Dated:  October 31, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

clay.749